IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ASHFORD INTERNATIONAL, INC., :
:
        Plaintiff, :
:
v. :    CIVIL ACTION NO.
:    1:04-CV-3822-JOF
THE WORLD BANK GROUP, et al., :
:
        Defendants. :

**OPINION AND ORDER**

This matter is before the court on Defendant World Bank's motion to dismiss [10] and Defendant Inter-American Development Bank's motion to dismiss or transfer [11].

I.    **Statement of Case**

A.    **Procedural History**

On December 30, 2004, Plaintiff, Ashford International, Inc., filed suit against Defendants, World Bank Group ("World Bank"), Inter-American Development Bank ("IDB") and various John Doe defendants. Plaintiff sought damages and injunctive relief for fraud in the inducement and tortious interference with business relations. On March 31, 2005, Defendants World Bank and IDB each filed a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to state a claim under Fed R. Civ. P. 12(b)(6). Defendant IDB also moved to have the case transferred pursuant to 28 U.S.C. § 1404(a).

**B.**     **Facts**

Defendant World Bank is one of the United Nations specialized agencies.   It is made up of many different entities, two of which Plaintiff is targeting in this suit.   Specifically, Plaintiff targets both the International Bank for Reconstruction and Development (IBRD) and the International Development Association (IDA).   See Complaint at 3.   The IBRD, created in 1944, is an international financial institution whose purposes include assisting the development of its member nations' territories, promoting and supplementing private foreign investment, and promoting long range balanced growth in international trade.   The IDA was established in 1960 for the purpose of providing long-term, interest free financing to the poorest developing countries.   Defendant IDB is an international organization created by its member nations under the Agreement Establishing the Inter-American Development Bank, April 8, 1959, 10 U.S.T. 3029, 389 U.N.T.S.  70, art. III, art. VII, § 3(a).  It is a multilateral, regional development bank which is the main source of multilateral financing for economic, social and institutional development projects as well as trade and regional integration programs in Latin American and the Caribbean.

Plaintiff is an international information-technology company involved in bidding on contracts offered by nations which receive loans from Defendant.   Between 1990 and1998, Plaintiff bid on three such contracts and was awarded one of its bids.   Between 1998 and 2002, Plaintiff bid on several contracts but was disqualified for sixty-five of sixty-seven bids.

**C.**     **Contentions**

2

Plaintiff contends that Defendants either willfully or negligently failed to monitor their member nations during the bidding process. Plaintiff alleges that because of this failure of oversight, Plaintiff's bids were disqualified despite having submitted the lowest bid. Plaintiff avers that member nations manipulated the bid procurement rules and violated laws prohibiting bid rigging in order to steer contracts away from Plaintiff. Plaintiff contends that Defendants solicited bids from Plaintiff and then failed adequately to maintain control over and properly supervise the bid selection process. Plaintiff maintains that this failure constituted fraud in the inducement and tortious interference with business relations.

Defendants raise many arguments in support of its motion to dismiss. First, Defendants contend that they are immune from suit under the International Organizations Immunity Act ("IOIA"). Defendants aver that they are immune from suit unless they expressly waive their immunity from suit. They claim that for this court to have jurisdiction, they must have waived not only their immunity from this type of suit but also as to this location. Defendants state that they have not waived their immunity as to this type of suit. Moreover, they claim that they have not waived their immunity as to the venue of this district court. Defendants also claim that Plaintiff does not have standing to bring this suit. In the alternative, Defendants state that Plaintiff's complaint should be dismissed for failure to state a claim. Defendants aver that the facts and allegations raised by the Plaintiff do not support a claim either for fraud in the inducement or for tortious interference with business relations. Finally,

Defendant IDB asserts that if this claim is not dismissed, it should be transferred to the District of Columbia pursuant to 28 U.S.C. § 1404(a).

**II.     Discussion**

      **A.        Immunity from suit**[1]

The governing law on the immunity of international organizations is the International Organizations Immunity Act ("IOIA"). This Act confers certain immunities on "international organizations in which the United States participates pursuant to a treaty or congressional act, and which have been designated by the president as being entitled to enjoy the provisions of the [IOIA]." *Mendaro v. World Bank*, 717 F.2d 610, 613 (D.C. Cir. 1983). Section 2(b) of the IOIA defines the privileges accorded to qualified international organizations:

> International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

_____

[1]In their motion to dismiss, Defendants contend that they must waive immunity as to venue as well as to the type of suit. Defendants support this contention with language from the Supreme Court in *Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99 (1984), which states that "immunity encompasses not merely whether [an entity] may be sued, but where it may be sued." This case does not support Defendants' contentions. In *Pennhurst*, the Supreme Court found that a state which waives its sovereign immunity in its own courts is not held to have waived its Eleventh Amendment immunity in federal court. In determining that immunity encompasses "where" an entity may be sued, this decision was referring to the type of court (state or federal) wherein a suit may be brought, not the venue within a court system. Thus, Defendants have provided no precedent on which the court could determine that Defendants must waive their immunity with regard to venue for a suit in federal court in Georgia.

4

22 U.S.C. § 288a(b) (1976).

This immunity can be limited in two ways. "First, the organization itself may expressly waive its immunity. Second, the President may specifically limit the organization's immunities when he selects the organization as one entitled to enjoy the [IOIA's] privileges and immunities." *Mendaro*, 717 F.2d at 613. Also at any later time, the President may also modify, condition, or revoke an organization's immunity by executive order. *Id.* at 613-14.

This court starts from the assumption that Defendants World Bank and IDB are entitled to absolute immunity under the IOIA and then addresses Plaintiff's argument that Defendants have waived their immunity. *Atkinson v. Inter-American Development Bank*, 156 F.3d 1335, 1337 (D.C. Cir. 1998). Plaintiff contends that Defendants have waived their immunity citing the language of each of the Banks' articles of agreement, which contain identical language, which state: "Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities." Articles of Agreement Establishing the International Bank for Reconstruction and Development, Article VII, § 3, December 27, 1945, 16 U.S.T. 1942; Articles of Agreement Establishing International Development Association, Art. VIII, § 3, January 26, 1960, 11 U.S.T. 2284; Agreement Establishing the Inter-American Development Bank, Art. XI, § 3, April 8, 1959, 10 U.S.T. 3068.

In *Lutcher S.A. Celulose e Papel v. Inter-American Development Bank,* the Court of Appeals for the District of Columbia construed this language as not merely a "venue provision for actions resulting from individual waivers; rather it is a provisional immunity and laying venue for the suits permitted."   382 F.2d 454, 457 (D.C. Cir. 1967).   Following *Lutcher*, the D.C. Circuit in two separate holdings set out to determine the breadth of this waiver contained in this language.   In *Mendaro*, the D.C. Circuit stated, "we are unable to read the somewhat clumsy and inartfully drafted language . . . as evincing an intent by the members of the Bank to establish a blanket waiver of immunity from every type of suit not expressly prohibited by reservations in Article VII section 3."   The court added, "[w]hen the language . . . is approached from this viewpoint it is evident that the World Bank's members could only have intended to waive the Bank's immunity from suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom the Bank would have to subject itself to suit in order to achieve its chartered objectives."   The court in *Mendaro* specifically referenced "debtors, creditors, and bondholders" because without waiving suit with regard to these entities, Defendants would not be able to lend or borrow money.   Without being able to lend and borrow money, Defendants would be incapable of performing their stated objectives.   Building on the ruling in *Mendaro*, the D.C. Circuit in *Atkinson* reached the default rule that "the Bank's immunity should be construed as *not waived* unless the particular type of suit would *further* the Bank's objectives." *Atkinson*, 156 F.3d at 1338.  (Emphasis in original).

6

Here, it is unlikely that Plaintiff's claims are of the sort that would further each Bank's objectives as contemplated by *Mendaro* or *Atkinson*. Plaintiff contends that its suit furthers Defendants' stated objectives by holding Defendants to their prescribed methods of overseeing the bid selection process. But it seems more probable that it would not further each of the Bank's objectives to subject its internal policies relating to the selection process to oversight by the courts of one of its members. While it is unlikely that Defendants waived their immunity to suit, Plaintiff's claims definitely should be dismissed for Plaintiff's failure to state a claim.

### B.    Standing

Defendants contend that this suit should be dismissed for lack of standing. Defendants rely solely on *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976), to support their position that Plaintiff is without standing to bring its claim against Defendants.

In *Simon*, the Supreme Court found that indigent plaintiffs lacked standing to bring suit against the IRS claiming it had "violated the Internal Revenue Code of 1954 and the Administrative Procedures Act by issuing a Revenue Ruling allowing favorable tax treatment to a nonprofit hospital that offered only emergency room services to indigents." *Id.* at 28. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id.* at 37. The issue before the court when a plaintiff's standing is challenged

7

is "whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision.  Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Id.* at 38.  Moreover, a federal court may only "redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Id.* at 41, 42.  Federal courts are not within their right to entertain unadorned speculation as to the redressability of an injury.  *Id.* at 44.  Stated succinctly, in order to have standing, a plaintiff must show (1) injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) finally it is necessary to show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  The court in *Simon* found the plaintiffs were unable to show causation or redressability.  *Id.* at 43.  ("It is purely speculative whether the denials of service specified in the complaint fairly can be traced to [the IRS's] encouragement or instead result from decisions made by the hospitals without regard to the tax implications.  It is equally speculative whether the desired exercise of the court's remedial powers in this suit would result in the availability to respondents of such services.")

Here, unlike *Simon*, to the extent that the injury complained of was the disqualification of Plaintiff's bids by member states, the court finds that Plaintiff has shown causation. Plaintiff contends that Plaintiff's bids were disqualified for sixty-five of sixty-seven bids it submitted to member nations for reasons that violated the Defendants' procurement

8

guidelines.   Plaintiff claims that Defendants failed to exercise proper oversight in the bid selection process and that if Defendants had exercised proper oversight, Plaintiff bids would not have been disqualified. .   Plaintiff contends that it was disqualified for fifty of fifty- five bids where it submitted the lowest bid.   Plaintiff contends that Defendants allowed member nations to implement local rules regarding the requirements for bids and change bid requirements in the middle of the bid process in direct contravention of Defendants' guidelines.   Therefore, Plaintiff has shown that at least some of its injury was caused by Defendants' failure to exercise proper control over the bid selection process.

What Plaintiff has not shown is redressability.   Plaintiff claims that had Defendants exercised proper oversight it would have received contracts for one-third of its bids. Plaintiff's only support for the fact that it would have received contracts for one-third of its bids is the fact that between 1990 and 1998 it submitted three bids and received one contract. Absent it having received a contract for one of three prior bids, Plaintiff has offered no evidence that it would have received contracts for any of its submitted bids had Defendants provided more oversight.   Plaintiff's claim for relief is entirely speculative.   Plaintiff has offered no evidence that a favorable decision of this court in this matter would redress Plaintiff's injury.   There is no evidence, save the fact that Plaintiff at one time received a contract for one of three prior submitted bids, that had Defendants followed their procedures with regard to the bid selection process, any of the member states would have chosen any of Plaintiff's bids.   Moreover, there is no guarantee that if Defendants were more stringent in

AO 72A
(Rev.8/82)

their oversight of the bid selection process, any of the member nations would have chosen to follow the Defendants' oversight and would have accept Plaintiff's bids.

Further, Plaintiff has offered no evidence that at the time it submitted the three earlier bids, Defendants' oversight of the bid selection process was any greater than during the period it contends it was injured by Defendants' failure to monitor the bid selection process. Without a more definite causation showing, Plaintiff's contention that a favorable outcome here would redress its injury as to the actual bid selection requires unadorned speculation. As noted in *Simon*, such unadorned speculation will not suffice to invoke the federal judicial power. *Id*. at 44. Therefore, Plaintiff has failed to establish standing with regard to its injury caused by the disqualification of its bids.

### C.     Failure to State a Claim

In their motion to dismiss, Defendants state that Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   Plaintiff's complaint attempts to set forth two claims for relief.   First, Plaintiff avers that it is entitled to relief for fraud in the inducement pursuant to O.C.G.A. § 13-5-5.   Next, Plaintiff claims it is entitled to relief due to Defendants' tortious interference with prospective business relations pursuant to   O.C.G.A. § 16-10-22.   Defendants contend that Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   The court will address both of Plaintiff's claims in turn.

### 1.     Fraud in the Inducement

10

With regard to its fraud in the inducement claim, Plaintiff avers that "defendants knowingly and willfully misrepresented to the Plaintiff that they possessed the intent and ability to actually oversee the process under which the plaintiff would be submitting its bids."[2] Under Georgia law a claim of fraud cannot be predicated on statements which are promissory in their nature as to future acts. *Cosby v. A.M. Smyre Mfg. Co.*, 158 Ga. App. 587(6), 281 S.E.2d 332 (1981). "Fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events." *Charter Medical, etc., Co. v. Ware Manor, Inc.*, 159 Ga. App. 378, 383, 283 S.E.2d 330 (1981).

Here, Plaintiff's claim is that Defendants promised they would oversee the process of bid selection if Plaintiff would submit bids. Specifically, the complaint states that "[t]he defendants knowingly and willfully misrepresented to the Plaintiff that they possessed the intent and ability to actually oversee the process under which the plaintiff would be submitting bids." This is undoubtably a promise of a future act. It does not matter, as Plaintiff contends, that at the time of the complaint Plaintiff had submitted the bids. Rather, the court looks at the statements at the time they were actually made. When the allegedly fraudulent statements were made, they were promising a future act, the monitoring and oversight of Plaintiff's future

---

[2] Plaintiff brought this state law claim under O.C.G.A. § 13-5-5 which states: "Fraud renders contracts voidable at the election of the injured party." This statute is a remedies statute and not a statute for an actionable fraud claim. Moreover, Plaintiff has not contended that Defendants' fraud induced Plaintiff into entering any contracts. Rather, Plaintiff contends that the inducement caused them to make offers that were not accepted.

11

bids.   Further, Plaintiff makes no allegation that the promise to oversee the bid selection process was false at the time it was made.   Because Plaintiff rests its claim of fraud upon statements which are promissory in their nature as to future acts, they have failed to state an actionable claim for fraud in the inducement under Georgia law.

12

### 2.    Tortious Interference

Plaintiff next alleges that Defendants tortiously interfered with prospective business relations in violation of O.C.G.A. § 16-10-22.    Plaintiff contends:

> [t]he relationships forged by the awarding of bids to Plaintiff would have provided economic and other benefits to Ashford but for defendants' efforts to ignore its own mission rules and guidelines which led to the denial of Plaintiff's bids.    These actions amount to tortious and anticompetitive conduct. The defendants' deliberate and primary  purpose in engaging in some, if not all, of the foregoing acts and practices was to disrupt Ashford's prospective contractual and economic relationships with other defendants as well as third parties.

Complaint at 18, 19.

As an initial matter the court notes that the statute, O.C.G.A. § 16-10-22, cited by Plaintiff in its complaint is a "criminal statute that prohibits an individual or corporation from unlawfully restraining competition in transactions involving the State.    It covers such situations as contract bidding for public work projects." *Sweeney v. Athens Regional Medical Center*, 709 F. Supp. 1563, 1577 (M.D. Ga.1989) (citing *State v. Shepherd Constr. Co., Inc.*, 248 Ga. 1, 281 S.E.2d 151 (1981)).    Because Plaintiff is not alleging an action involving the state, it is not entitled to any relief under O.C.G.A. § 16-10-22.  *Id.*

Even if Plaintiff is seeking relief for the common law cause of action for tortious interference, it is not entitled to relief.    In order to support a claim for tortious interference with business relations, a Plaintiff must show that the alleged tortfeasor is a third party or

13

stranger to the business relations in issue. *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga. App. 333, 336 (1994).

At no point has Plaintiff alleged that Defendants were strangers to the business relations between Plaintiff and contracting nations. Rather, Plaintiff contends that Defendants were intrinsically involved in the process and should have been more involved in their oversight of the bidding process. Whatever Defendants' actual involvement in the process, it is clear that they are not "strangers" but, as Plaintiff itself suggests, were intrinsically involved in the bidding process. Therefore, this court cannot find Defendants to be "strangers" to Plaintiff's business relations. Thus, Plaintiff has failed to state an actionable claim for relief for tortious interference with business relations under Georgia law.

Plaintiff has failed to state an actionable claim, either for fraud in the inducement or tortious interference with business relations. Therefore, the court GRANTS Defendants' motions to dismiss.[3]

---

[3]Having dismissed all of Plaintiff's claims, there is nothing for the court to transfer to the District of Columbia. Therefore, the court DENIES AS MOOT Defendant IDB motion to transfer.

**III.      Conclusion**

The court GRANTS Defendant World Bank's motion to dismiss [10].    The court GRANTS Defendant Inter-American Development Bank's motion to dismiss and DENIES AS MOOT Defendant Inter-American Development Bank's motion to transfer [11].


**IT IS SO ORDERED** this 24th day of March 2006.


        s/ J. Owen Forrester
        J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)